**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| DAVID G. CONTRERAS,<br><br>  Plaintiff,<br><br>  v.<br><br>GEORGE L. MEE MEMORIAL HOSPITAL,<br><br>  Defendant. | Case No. 15-cv-03963-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF 27] |

Plaintiff David Contreras worked as a licensed Radiologic Technologist ("X-ray tech") for Defendant George L. Mee Memorial Hospital (the "Hospital") from April 20, 2000 until he was terminated on August 1, 2014 at age 63. Plaintiff contends that his termination was a result of unlawful age discrimination. Plaintiff also alleges that after his termination the Hospital defamed him by knowingly giving false information to The American Registry of Radiologic Technologists ("ARRT"). The Hospital disputes these claims and defends its decision to terminate Contreras as a legitimate business decision.

Now before the Court is Defendant's motion for summary judgment on all claims. *See generally* Mot., ECF 27. The Court has considered the briefing, the admissible evidence, and the argument presented at the hearing on June 22, 2017. For the reasons discussed below, Defendant's motion is GRANTED.

**I. FACTS[1]**

The Hospital hired Contreras as a licensed X-ray tech in its Diagnostic Imaging Department ("X-ray department") on April 20, 2000. Ex. A to McCarthy Decl. ("Contreras

---

[1] The facts set forth in this section are undisputed unless otherwise noted.

Dep.") 16:8–14, 17:21–25, 23:21–23, 65:2–19, ECF 28; Ex. B-5 to McCarthy Decl. ("Job Description"), ECF 28. Contreras, like other X-ray techs at the Hospital was hired on an at-will basis, and could thus be terminated for any reason and without notice. Contreras Dep. 61:20–62:4, 63:6–64:23; Ex. A to Oliver Decl. ("Jenkins Dep.") 189:11–190:2, ECF 29.

As an X-ray tech, Contreras was responsible for operating the X-ray equipment to make X-rays of designated portions of the body as ordered by the physician. Job Description 1. Specifically, Contreras' official job description listed the following essential functions of his position: perform diagnostic techniques and examinations; meet patient physical and psychological needs; provide radiation protection to self and patient; maintain adequate records; perform routine inspection and maintenance of equipment; assist in keeping equipment and area clean and secure; assist in various clerical duties; and participate in training and in-service functions. *Id.* at 1–2. In this role, Contreras was expected to, among other things, learn new procedures and accept new assignments within a reasonable timeframe; maintain an awareness of changes in Hospital policies, procedures, and protocol; and comply with all policies and procedures outlined in the adopted Policy and Procedures manual. *Id.* at 2.

Contreras worked at the Hospital without incident for several years and his supervisors reported that he excelled in following procedures. Contreras Dep. 173:16–23. However, patients began reporting that their property had been stolen after Contreras X-rayed them in August 2012. *See* Ex. B-13 to Oliver Decl. ("August 2012 Quality Review Report"), ECF 29; Contreras Dep. 121:1–122:20; Jenkins Dep. 193:19–194:4.

On September 12, 2012, Contreras' supervisor Kevin Jenkins completed a Quality Review Report—essentially an incident report—detailing a patient's complaint that she discovered she was missing $200 from her purse after Contreras performed her ankle X-ray. August 2012 Quality Review Report; Contreras Dep. 105:2–5, 109:19–22, 120:5–19; Jenkins Dep. 164:12–25, 168:7–19, 192:3–195:17. The Hospital's investigation concluded that Contreras was the only person in the room when Contreras performed the X-ray, and in fact, the only X-ray technician on duty at the time of the incident, and that Contreras contributed to the incident by failing to properly secure the patient's property. August 2012 Quality Review Report; Contreras Dep.

105:2-5, 109:19-22, 119:1–120:19; Jenkins Dep. 168:7-19, 194:9–195:13. In response to the complaint and investigation, Jenkins instructed Contreras to be "more careful and diligent in handling patients' valuables." Contreras Dep. 115:2–24. In the Quality Review Report, Jenkins wrote that a similar incident had occurred previously, but provided no details.[2] *See* August 2012 Quality Review Report 2.

Two years later, on January 8, 2014, the Hospital received another complaint from a patient who reported $300 missing after Contreras had taken his X-ray. Contreras Dep. 137:21–139:14; Jenkins Dep. 168:7–19, 196:25–170:4.

In response to these four incidents, Jenkins and Larry Blanco, the Hospital's senior X-ray technician, developed a written policy, entitled "Diagnostic Imaging Security Protocol" ("Protocol"), which was designed to protect patients' personal property while in the X-ray room. Ex. B-1 to Oliver Decl. ("Protocol"), ECF 29; Ex. B-49 to Oliver Decl. ("Jenkins Decl. ISO Charge of Discrimination") ¶ 4, ECF 29; Blanco Decl. ¶ 4, ECF 31.

The Protocol listed the following six procedures for securing patients' personal effects: First, the X-ray tech was to ask the patient to place all of their personal items in carrier. Protocol. Second, the X-tech was to place the carrier into a "security locker," "[m]aking certain that the patient never losses site [sic] of [their] personal items." *Id.* Steps three and four required the tech to lock the security locker and give the patient the key, retrieve the key at the end of the exam, and give the patient the container full of his or her belongings. *Id.* The final step admonishes the X-tech to use the security locker with every patient that has valuables with them. *Id.* The Hospital also created a form that allowed the X-ray tech to obtain the patient's signature when he or she initially secured the patient's valuables and also once the valuables were returned to the patient in order to "protect the patient [and] the technologist." Ex. B-65 to Oliver Decl. ("Patient Valuables Policy"), ECF 29; Jenkins Dep. 108:23–109:5. Use of this form was at the X-ray tech's discretion. Jenkins Dep. 107:2–9.

---

[2] During his deposition, Jenkins could not recall when the prior incidents had occurred, but speculated that it had occurred "at least more than twice." Jenkins Dep. 193:19–194:8. Similarly, at his deposition, Contreras indicated that these incidents were not brought to his attention until he was terminated. 121:4–122:20.

The Protocol was shared with all members of the X-ray department—it was discussed at a departmental meeting as well as individually with the X-ray techs and was posted in the exam rooms. *Id.* 88:18–24; Contreras Dep. 143:9–13. Contreras and all of the X-ray techs were required to acknowledge receipt of the Protocol in writing. Blanco Decl. ¶ 7; Patient Valuables Policy (showing Contreras' signature); Contreras Dep. 54:16–24; Jenkins Dep. 18–24. Additionally, at some point, Blanco personally explained the Protocol and trained every X-ray technician, including Contreras, on how to best secure patients' property in compliance with the Protocol. Blanco Decl. ¶ 8.

Thereafter, on January 23, 2014, Contreras met with Blanco and Jenkins to discuss the January 8, 2014 patient complaint and the newly instituted Protocol. Jenkins Dep. 225:4–8; Contreras Dep. 139:7–14, 143:9–16; Blanco Decl. ¶ 6. Further, at this meeting, Contreras was warned that failure to follow the Protocol moving forward would result in his termination. Contreras Dep. 159:22–160:1; Jenkins Dep. 225:4–16; Blanco Decl. ¶ 6. In a follow up meeting on February 5, 2015, Jenkins and Karen Wong, the Hospital's Chief of Human Resources, gave Contreras a final written warning in the form of a "Corrective Action Counseling" document. Contreras Dep. 160:16–162:2; Jenkins Dep. 218:15–219:20, 225:17–226:17, 227:2–13; Ex. B-15 to Oliver Decl. ("Corrective Action Counseling Form"), ECF 29. That document instructed Contreras to follow the Protocol and warned him that failure to do so would result in "discipline up to termination." Corrective Action Counseling Form; Contreras Dep. 164:13–16; Jenkins Dep. 225:9–12; Ex. B-15 to Oliver Decl., ECF 29.

On July 26, 2014, another patient, referred to as Mr. Z, filed a complaint with the Hospital. Ex. B-70 to Oliver Decl. ("July 2014 Patient Complaint"), ECF 29. Mr. Z reported that he noticed he was missing $600 after having been at the Hospital and accused "[t]he man who took [his] X-rays" of stealing the money. Ex. B-70 to Oliver Decl. 13, ECF 29. During a conference call with Mr. Z on July 30, 2014, Mr. Z stated that he carried his wallet inside of a bag in his pants, which he took off and put against the wall before Contreras X-rayed him. *Id.*; Miller Decl. ¶ 4, ECF 30. When Mr. Z returned to his home, he realized that his $600 was missing and complained to the Hospital. Ex. B-70 to Oliver Decl. 13. After receiving Mr. Z's complaint, Denise Miller, the

4

Hospital's Risk Manager, conducted an investigation into the matter and concluded that Contreras had failed to follow the Protocol while taking Mr. Z's X-ray. Miller Decl. ¶ 1, 3–4; *see also* Ex. A to Miller Decl. ("2014 Investigation Report), ECF 30. Although Contreras denied taking Mr. Z's money, he confirmed that he did not follow the Protocol. 2014 Investigative Report 8–9 ("Contreras Letter"); Contreras Dep. 191:7–15, 198:2–9.

Subsequently, on August 1, 2014, the Hospital terminated Contreras' employment for failure to follow the Protocol. Contreras Dep. 40:6–15, 42:17–23, 44:5–10; Jenkins Dep. 89:25–90:4; Ex. A to Hritz Decl. ("Personnel Action Report"), ECF 32.

On April 16, 2015, the Hospital received a letter from The American Registry of Radiologic Technologists ("AART") indicating that it was investigating a possible violation of the *AART Standards of Ethics* and/or *Rules and Regulations* by Contreras. Ex. B-24 to McCarthy Decl. ("April 2015 AART Letter"), ECF 28. The letter indicated that AART had received an allegation that Contreras was stealing from patients while employed at the Hospital. *Id.* When the Hospital did not respond, ARRT sent a second letter requesting the same information. Ex. B-25 to McCarthy Decl. ("May 2015 AART Letter"). The Hospital ultimately responded that it would not share Contreras' information without his signed release. Ex. B-26 to McCarthy Decl.

## II.     EVIDENTIARY OBJECTIONS

### A.     Plaintiff's Objections

Contreras objects to evidence provided by Mr. Jenkins, wherein Jenkins states that the Hospital replaced Contreras on February 23, 2015, with a 49-year old X-ray technician with more than 14 years of experience in the field at the same pay rate as Contreras at the time of his termination. Opp'n 13; Mot. 9; Jenkins Dep. 177:5–12; Ex. B-49 to Oliver Decl. ("Jenkins Decl. to EEOC") ¶ 14, ECF 29. Contreras objects to this evidence as hearsay. Opp'n 13. The Court SUSTAINS this objection and will not consider this evidence.

Contreras also objects to note 5 on page 9 of the Hospital's motion, which states that the Diagnostic Imaging Department has not received any allegations of theft since Contreras was terminated. Opp'n 13; Mot. 9 n.5; Miller Decl. ¶ 8; Jenkins Dep. 240:9–20. Plaintiff objects to this evidence as lacking foundation. Opp'n 13. As the Hospital's Risk Manager, Ms. Miller is

likely to have knowledge of any reported thefts. *See* Miller Decl. ¶ 1. Moreover, as the Hospital's Diagnostic Imaging Department Manager, Mr. Jenkins is also likely to have knowledge of any reported thefts involving the department. Jenkins Decl. to EEOC ¶ 1. For these reasons, the Court finds that this evidence is properly supported and thus OVERRULES the objection.

### B. Defendant's Objections

The Hospital objects to the three declarations of Contreras' wife and two daughters that were filed in support of Plaintiff's opposition. Reply 2–4, ECF 45; *see* ECF 39 (declarations of Teresa, Amy, and Sarah Contreras). The Hospital objects on the ground that the declarants lack personal knowledge and the declarations contain inadmissible hearsay and opinion. Reply 2. Because the Court agrees with the Hospital, it will SUSTAIN the objections. The Court will not consider the declarations.

### III. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not

produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## IV. DISCUSSION

### A. Age Discrimination Claims

Contreras claims that the Hospital terminated his employment in violation of the ADEA and FEHA. To establish a violation of either statute, Contreras must prove that the Hospital terminated his employment "because of" his age, meaning that Plaintiff's age was the "but for" cause of the Hospital's adverse employment action against him. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); Cal. Gov't Code § 12940(a).

#### i. *McDonnell Douglas* Standard

The ADEA protects employees over the age of 40 by making it "unlawful for an employer to discriminate 'because of [an] individual's age.'" *Shelley v. Geren*, 666 F.3d 599, 606–07 (9th Cir. 2012) (citing 29 U.S.C. § 633a(1)). On summary judgment, age discrimination claims under the ADEA and FEHA are governed by the *McDonnell Douglas* burden-shifting evidentiary framework. *Id.* at 607–08; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000) (holding that, because of similarity between state and federal employment discrimination laws, California has adopted the *McDonnell Douglas* approach to claims of discrimination under FEHA). Under this framework, the plaintiff bears the initial burden to "establish a prima facie case of age discrimination." *Shelley*, 666 F.3d at 608 (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1280–81 (9th Cir. 2000)). A *prima facie* showing requires the plaintiff to establish that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) suffered an adverse employment action, and (4) was replaced by

7

substantially younger employees with equal or inferior qualifications. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted); *Coleman*, 232 F.3d at 1281.

"While the plaintiff's prima facie burden is 'not onerous,' he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a [prohibited] discriminatory criterion.'" *Guz*, 24 Cal. 4th at 355 (alteration in original) (internal citations and quotation marks omitted). "At summary judgment, the 'requisite degree of proof necessary to establish a *prima facie* case . . . is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing and quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

If the plaintiff establishes a prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate one or more legitimate, nondiscriminatory reasons for the challenged actions. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If this burden is met, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the employee's] termination[ ] are mere pretext for unlawful discrimination." *Id.*

To establish pretext, the employee must offer "specific, substantial evidence of [it]." *Wallis*, 26 F.3d at 890 (quoting *Steckl v. Motorola*, 703 F.2d 392, 393 (9th Cir. 1983)) (internal quotation marks omitted). Evidence of pretext must be considered cumulatively. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1129 (9th Cir. 2000). "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise unbelievable." *Dominguez-Curry v. Nev. Transp. Dept.* 424 F.3d 1027, 1037 (9th Cir. 2005) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998). An employer's nondiscriminatory reason is not rebutted where "the employee simply show[s] the employer's decision was wrong, mistaken, or unwise." *Horn v. Cushman & Wakefield W., Inc.*, 72 Cal. App. 4th 798, 807 (1999).

        **ii.    Prima Facie Claim for Discrimination**

The Hospital seeks summary judgment on the basis that Plaintiff's claims for age discrimination under both the ADEA and FEHA fail because he cannot establish a prima facie case for age discrimination. Mot. 13–15. The parties do not dispute that Contreras is a member of a protected class or that he was subject to an adverse employment action. Accordingly, the issues in dispute regarding Plaintiff's *prima facie* case are whether Contreras performed his job in a satisfactory manner and whether he was replaced by a substantially younger employee with equal or inferior qualifications. *See* Mot. 13–15.

To establish satisfactory job performance, Plaintiff must produce "substantial evidence of satisfactory job performance sufficient to create a jury question on this issue." *Douglas v. Anderson*, 656 F.2d 528, 533 n.5 (9th Cir. 1981). At the *prima facie* stage, the plaintiff need not "eliminate the possibility that he was laid off for inadequate job performance," because such a requirement would "conflate the minimal inference needed to establish a prima facie case with the specific, substantial showing" required at the pretext stage of the *McDonnell Douglas* analysis. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002). However, even though courts do not require a "flawless personnel file at all times during employment," *Bahri v. Home Depot USA, Inc.*, 242 F.Supp.2d 922, 931 (D. Or. 2002), a plaintiff who continues to violate company policy despite a clear warning cannot demonstrate satisfactory performance. *Diaz*, 521 F.3d at 1205–06.

The Hospital argues that because it has presented undisputed evidence that Contreras violated company policy and failed to improve his performance despite a warning, there is no genuine dispute of fact that Contreras was not performing satisfactorily. Mot. 13. However, Plaintiff correctly points out that in its Answer, the Hospital did not contest Contreras' allegation that he received "excellent reviews." Opp'n 6; Ans. ¶ 18, ECF 13; Compl. ¶ 18, ECF 1. And, the Hospital also admitted that Contreras' April 24, 2014, Annual Employee Performance Appraisal rated him as "outstanding" in the category "Adheres to Standard Hospital Policies and Procedures." Ans. ¶ 20. Thus, Defendant has failed to demonstrate that Contreras cannot carry his ultimate burden at trial to prove that he was performing satisfactorily. *Bd. of Tr. of the Ken Lusby Clerks & Lumber Handlers Pension Fund v. Piedmont Lumber & Mill Co.*, 132 F. Supp. 3d

1175, 1181 (N.D. Cal. 2015) (deeming that defendant had made a judicial admission in deciding a motion for summary judgment where "Oliver's Answer to the SAC admitted the allegation"); *see also American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.").

As to the final prong of a *prima facie* case—whether Contreras was replaced by a substantially younger employee with equal or inferior qualifications—the Hospital has not provided any admissible evidence regarding Contreras' replacement. Accordingly, the Hospital has not met its burden as the moving party, and therefore, the Court DENIES summary judgment on the ground that Contreras cannot establish a *prima facie* case of age discrimination.

### iii. The Hospital's Proffered Legitimate Reason for Terminating Plaintiff

Relying on the numerous warnings that Contreras received regarding following Hospital protocol prior to his termination, the Hospital argues that it had a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Mot. 14. It is undisputed that Contreras was told that failure to comply with the Protocol would result in termination. Contreras Dep. 159:22–160:1; Jenkins Dep. 225:4–16; Blanco Decl. ¶ 6. It is also undisputed that, on February 5, 2015, Jenkins and Karen Wong, the Hospital's Chief of Human Resources, gave Contreras a final written warning in the form of a "Corrective Action Counseling" document. Contreras Dep. 160:16–162:2; Jenkins Dep. 218:15–219:20, 225:17–226:17, 227:2–13; Corrective Action Counseling Form. That document instructed Contreras to follow the Protocol and warned him that failure to do so would result in "discipline up to termination." Corrective Action Counseling Form; Contreras Dep. 164:13–16; Jenkins Dep. 225:9–12; Ex. B-15 to Oliver Decl. Despite these warnings and admonitions, Mr. Contreras subsequently confirmed that he did not follow the Protocol. Contreras Letter 8–9; Contreras Dep. 191:7–15, 198:2–9.

Instead of disputing the aforementioned facts, Contreras disparages the Hospital's protocol as "a foolish, Rube Goldberg contraption." Opp'n 8. The Court finds this critique irrelevant. *Guz*, 24 Cal. 4th at 358 ("[I]f nondiscriminatory, [an employer's] true reasons need not necessarily have been wise or correct." (citations omitted)). Indeed, other courts have found that terminating

10

an employee's employment because of a repeated failure to follow company protocols is a legitimate, nondiscriminatory reason for terminating employment. *See, e.g.*, *Graves v. Johnson Control World Servs., Inc.*, No. C-05-1772, 2006 WL 618796, at *4 (N.D. Cal. Mar. 13, 2006) ("Defendant has proffered evidence showing that the reasons for taking disciplinary action were not discriminatory, but rather were motivated by Defendant's concern over Plaintiff's professional performance, specifically his persistent tardiness, perceived abuse of vacation and sick leave, and a failure to follow applicable safety procedures."); *Scott v. Sears, Roebuck & Co.*, 395 F. Supp. 2d 961, 979 (D. Or. 2005) (finding employer articulated legitimate, nondiscriminatory reason for terminating employee, namely that employee failed to complete all elements of a brake job requested and paid for by customer and employee admitted to not performing services he knew he was expected to perform on at least one of the recalled brake jobs.). What's more, the Hospital has presented undisputed evidence demonstrating that Contreras explicitly disobeyed two directives regarding compliance with the Protocol. Thus, the Court finds that the Hospital has established a legitimate reason for terminating Contreras.

### iv. No Showing of Pretext

Because the Hospital has met its burden of persuasion with respect to a legitimate reason for firing Mr. Contreras, Contreras must now provide some evidence to support his claim that the stated reasons were merely a pretext for discrimination. A plaintiff can show pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Chuang*, 225 F.3d at 1127.

#### a. Direct Evidence

Direct evidence "is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption," and it "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094–95 (9th Cir. 2005). Very little direct evidence is required to raise a genuine issue of material fact. *Id.* at 1095.

Here, Contreras has presented evidence regarding several comments made related to his

11

age by Mr. Jenkins.[3] Opp'n 10–11. Contreras testified that Jenkins and Blanco made comments about his age forty to fifty times over the course of six months. Contreras Dep. 92:1–6. However, all of the evidence Contreras provides relates only to comments made by Mr. Jenkins directly to Mr. Contreras or through Mr. Blanco. In his deposition, Contreras identifies the following statements

- "If it wasn't this, it would have been something else." Contreras Dep. 43:3–6 (August 2014).
- "You're an old man, don't you want to sit on your porch drinking beer? You don't want to do this. How long do you think you can do this." Contreras Dep. 43:21–44:1 (early 2014).
- In response to Contreras reporting that Jay Chao, another X-ray tech, had falsified documentation, Jenkins responded (through Blanco): "[H]e's young. He will learn." Contreras Dep. 78:9 (unknown date). Jenkins repeated this sentiment after another incident involving Chao. *Id.* at 80:16.

Both Jenkins and Blanco deny that they ever made these alleged statements. Jenkins Dep. 116:1–4, 158:10–18, 174:2–22, 177:24–180:10; Ex. C to Oliver Decl. ("Blanco Dep.") 78:17–79:1, 94:5–17, ECF 29. The Hospital argues that even if Jenkins and/or Blanco did make any of the alleged statements, they are stray comments that are insufficient to show pretext. Reply 8.

The Court agrees with the Hospital. To demonstrate pretext, the only evidence before the Court are the alleged remarks. The Ninth Circuit has held that similar kinds of statements were merely "stray" remarks and, thus, were insufficient to create a genuine issue of fact regarding age discrimination. *See Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438–39 (9th Cir. 1990) (holding that hiring supervisor's statement that he hired a younger employee over plaintiff because he was "bright, intelligent, knowledgeable young man" was a stray remark insufficient to create an inference of age discrimination); *see also Coleman*, 232 F.3d at 1271, 1284–85 (summarizing remarks that did not support an inference of discrimination, such as "we don't necessarily like grey hair," "old timers," "old-boy network," and "overqualified"; holding that employer's statement that plaintiff was not "young and promotable" did not give rise to suspicions of age

---

[3] Plaintiff also argues that Jay Chao, another X-ray tech, also made comments about his age. Opp'n 11. The evidence does not support this assertion, however. *See* Contreras Dep. 77:10–78:19.

12

discrimination); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that employer's statement that "[w]e don't necessarily like grey hair" did not support inference of discriminatory motive). Moreover, most of the alleged statements were made at least six months prior to his termination, and are thus too attenuated to be considered direct evidence particularly where there is no allegation that the remarks were connected to Contreras' termination.[4] *See Nesbit*, 994 F.2d at 705; *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir. 1989) (noting that stray "remarks, . . . when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decisionmaker in issue") (cited with approval in *Merrick*, 892 F.2d at 1438).

Contreras also testified that another X-ray technician made the following comment to him at some point during his employment at the Hospital: "You know, you're getting older. How long do you want to do this?" Contreras Dep. 76:23–24. This alleged statement is also insufficient to create an inference of age discrimination because there is no evidence showing that this X-ray tech was involved in the decision to terminate Mr. Contreras' employment. *See Mondero v. Stald River Project*, 400 F.3d 1207, 1213 (9th Cir.2005) (stray remarks not acted upon or communicated to the decision maker are insufficient to establish discriminatory animus); *Horn*, 72 Cal. App. 4th at 809 (finding that a "'stray' ageist remark . . . is entitled to virtually no weight in considering whether the firing was pretextual or whether the decisionmaker harbored discriminatory animus" where person who made the alleged remark did not make the decision to terminate plaintiff).

Accordingly, the alleged statements are insufficient to create a genuine issue of fact regarding pretext.

### b. Indirect Evidence

A plaintiff can also show pretext "indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Burdine*, 450 U.S. at 256; *see Chuang*, 225 F.3d at 1127. Indirect, circumstantial evidence must be "specific and substantial." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004); *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061,

---

[4] The comment made at the time Contreras was terminated does not appear to relate to Contreras' age.

13

1066–67 (9th Cir. 2003); *see Njenga v. San Mateo Cty. Superintendent of Sch.*, No. C–08–04019, 2010 WL 1261493, at *20 (N.D. Cal. Mar. 30, 2010)). "A 'plaintiff cannot create a genuine issue of pretext to survive a motion for summary judgment by relying solely on unsupported speculations and allegations of discriminatory intent.'" *Jackson v. Geithner*, No. CV F 11–0055, 2011 WL 2181394, at *12 (E.D. Cal. June 3, 2011) (quoting *Crawford v. MCI Worldcom Commc'ns, Inc.*, 167 F.Supp.2d 1128, 115 (S.D. Cal. 2001)).

Specific positive assessment of a plaintiff's performance by his or her co-workers or other managers may be "specific and substantial" circumstantial evidence that the employer's negative assessment was pretextual." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1051 (9th Cir. 2009). Here, Contreras contends, and the Hospital does not contest, that his performance reviews were "excellent" or "outstanding." Ans. ¶¶ 18, 20; Compl. ¶¶ 18, 20. However, there is no dispute that the Hospital received several patient complaints of stolen property connected to Mr. Contreras between 2012 and his termination in August 2014. August 2012 Quality Review Report; Contreras Dep. 121:1–122:20; Jenkins Dep. 193:19–194:3. Moreover, Contreras does not dispute that he violated the Hospital's policy despite receiving warnings that failure to follow the policy would result in termination. Contreras Letter 8–9; Contreras Dep. 191:7–15; 198:2–9. Accordingly, even if the Court fully credits the evidence regarding Mr. Contreras' performance, the only reasonable inference that can be drawn from the evidence submitted is that based on Mr. Contreras' own admission that he failed to follow Hospital policy, the Hospital found Contreras' performance and conduct unsatisfactory and that his failure to comply with specific directives warranted termination.

Pretext can also be established through comparator evidence. *McDonnell Douglas*, 411 U.S. at 804. For example, if an employer claims that it fired plaintiff for violating workplace rules, a plaintiff may prove pretext by submitting evidence that either (1) he did not violated the rule or (2) if he did, other employees who engaged in similar acts were not similarly treated. *See Vasquez*, 349 F.3d at 641.

Contreras argues that several Emergency Room employees did not follow the ER's procedures for securing patients' valuables but were not terminated. Opp'n 9–10; Ex. B-19 to

14

McCarthy Decl., ECF 28. This evidence does not create a disputed issue of fact because it does not show that the Hospital treated similarly situated employees outside of Contreras' protected class more favorably than him. *Vasquez*, 349 F.3d at 641. Individuals are similarly situated only when they have similar jobs and display similar conduct. *Id.* Here, Contreras is plainly not similarly situated to ER employees because they do not have similar jobs and are not regulated by the same protocols. Childers Decl. ¶ 3, ECF 35. Moreover, there is no evidence regarding any prior complaints against the ER employees, nor is there any indication that those employees were told they would be terminated if they did not comply with the policy. Finally, as the Hospital's Chief Executive Officer testified, each department manager has the authority to create, implement, and enforce department-specific policies, protocols, and procedures distinct to that department. Childers Decl. ¶ 3; *see also* Miller Decl. ¶ 2. Thus, any practices outside of the X-ray department are irrelevant to Mr. Contreras' situation.

For the foregoing reasons, the Court GRANTS the Hospital's motion for summary judgment on Contreras' claims for discrimination under the ADEA and FEHA.

### B. Claim for Defamation

Plaintiff also alleges that after his termination, the Hospital defamed him by knowingly giving false information to ARRT. To state a prima facie case of defamation under California law, a plaintiff must show (1) the intentional publication of (2) a statement of fact (3) that is false (4) unprivileged and (5) has a natural tendency to injure or which causes special damage. *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). "Publication need not be to the 'public' at large; communication to a single individual is sufficient." *Id.* (citations omitted).

The Hospital seeks summary judgment on Contreras' defamation claim because Plaintiff has provided no evidence that any authorized employee or agent of the Hospital made any defamatory statements to ARRT or anyone else. Mot. 19. In the alternative, the Hospital claims that even if an authorized employee or agent of the Hospital had made the alleged defamatory statements, the statements would be absolutely privileged under Cal. Civil Code § 47(b)(3). Mot. 19.

In response, Plaintiff concedes "that nobody from the [Hospital] directly contacted the

15

ARRT to tell them [that he] was terminated for stealing." Opp'n 14. Additionally, Contreras does not dispute the Hospital's contention that the alleged statements would be privileged under California law. *See generally id.* Nevertheless, Contreras continues to claim that he should be allowed to pursue his defamation case based on his attorney's speculation that "someone connected with Mee Memorial told someone outside of Mee Memorial that the plaintiff had been terminated for stealing, and [ ] that it was not a one-off." *Id.* at 15.

Based on his own concession, the Court finds ample grounds to GRANT the Hospital's motion for summary judgment on Contreras' defamation claim. *Celotex*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## V.  ORDER

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment as to all remaining claims.

Dated: July 11, 2017

_____
BETH LABSON FREEMAN
United States District Judge